Ms. Clerk, please call the next case. 09-3376, Leslie Borle v. Retirement Board of Firemen's Annuity & Benefit Fund of Chicago, Ed. Good morning, counsel. When your name is called, you were probably here, so you heard what I said earlier. Please approach, tell us your name and whom you represent. Make sure the microphone is recording what you say because these proceedings are all being recorded. And 15 minutes per side. The appellant should save a few minutes for rebuttal whenever you're ready. Thank you, Your Honors. Good morning. My name is Vincent Pinelli, P-I-N-E-L-L-I, and I represent the appellant, the Board of Trustees of the Firemen's Annuity & Benefit Fund of Chicago. Good morning, Justices. My name is Tom Needham. My last name is spelled N-E-E-D-H-A-M, and my client is Jeffrey Boyle. He's the appellee this morning. Thank you. Mr. Pinelli, whenever you're ready. Good morning, Your Honors. As you know, this case involves the appeal of a unanimous decision by the Board of Trustees of the Chicago Firefighters Pension Fund of the denial of an application for a lifetime retirement annuity. First of all, thank you for the opportunity to present oral argument on this, as this is a case of first impression. So we appreciate that opportunity. There are two issues for the court to decide today. First of all is, of course, the appropriate standard of review, and that is whether or not the court should apply a de novo, clear and convincing standard, or manifest weight. The second issue is, was the Board's decision correct under the language of Section 6-221, considering the language of that statute and case law applying comparable provisions under other articles of the pension code? What do you think the standard of review is, Mr. Pinelli? Judge, that's a good question. I think when we started our briefs on this, because the lower court applied a de novo standard and counsel for the appellee has been arguing consistently it's a de novo standard, we felt strongly that it is not a de novo standard. That standard applies where there's truly an interpretation of statutory language itself. In other words, what does that language mean? We have always asserted it is at least a clear and convincing standard, but probably in light of this Court's recent decision in Romano 2, a manifest weight standard. And I have come to the conclusion, I think, that I believe it is a manifest weight standard, and here's why I say that, Judge. Because as you know, the issue to be decided in these pension forfeiture cases is was there a nexus between the crimes committed and the public employee's employment? That's the sole issue. And the nexus language is in these statutes. That is, did it relate to, arise out of, or in connection with their employment? Now, those words do not, I don't believe, require any of us to interpret what do they mean. They mean what they say. What they do require is applying them to facts. And so the nexus issue, in my opinion, in our opinion, is a fact-intensive issue in each and every pension forfeiture case, whether it's under Article 6 or any of the other articles. And I think this Court got there in Romano, in Romano 2, which was just decided in June of this year. PLA was made but was denied by the Supreme Court. So I think the appropriate standard is manifest weight, and that's because, as Justice Harris pointed out in the earlier argument, the appropriate standard of view is critical. It's critical in these cases because here we have a board that consists of five firemen. Three actives are retired and the deputy fire commissioner. Between them, they have hundreds of years of experience in the training, education, and experience that firefighters get on the job. But, Mr. Pennelly, that's always going to be the case. Does that mean that whatever the board decides, the review in court must always give deference to that, even if it's not based? Even if the review in court disagrees or believes it's not based on the record, the argument that you're making is that the years of experience of the members of the board, the firemen on the board, is so overwhelmingly large that we ought to just defer to it. Well, I'm not saying it's absolutely you must defer to it, but what we're saying is the starting point of the analysis here, because in this case the issue is did he use his training and specialized knowledge to start these fires? That's a critical issue. Let's talk about that. Give me some examples of what you consider to be the specialized training that he used to start these fires. I think we can all agree that it was reprehensible for a fireman to be an arsonist, but that's not the issue here. The issue is, is there some nexus between being a fireman and these arson fires or not? Yes, Judge, and I will answer that, but to finish the thought on the standard review, remember an administrative review, findings of fact are deemed to be true and correct. So, again, that's... There's a dispute on the facts from your point of view. Absolutely. The facts in this case, as in many of these cases, most of them are undisputed as to what happened. But to answer your question, what was the conduct here and what was the specialized nature of experience that he had, and we've elicited that in our briefs to some detail that Mr. Boyle admitted at the hearing that he learned certain things during his training and experience as a firefighter, including ignition temperatures for different materials, how to communicate fires from an ignition source to a structure. He saw methods used by arsonists that include the use of dumpsters, garbage cans, trash piles to spread fire from one structure to another. So, in essence, he learned about these techniques while he was on the job. And then he made use of them in a modus operandi when he went on this arson spree over the number of years. And why do we say that? Because the evidence, again, undisputed is, and you have all the reports in the record, is that this is what he was doing. Lighting dumpsters on fire, pushing them up against buildings, lighting garbage cans on fires, pushing them up against buildings. And in the example that I think really highlights this, which, by the way, you don't have to find that he used his knowledge in every one of the eight arsons he was convicted of. You just have to find one of them. And the one that I think stands out to me is the fire where two dumpsters were pushed up against Brandy's Restaurant against an open grease trap. Now, the police report says this is highly unusual. So a policeman who had nothing to do with a pension board or anybody making a comment about, is he using specialized knowledge, finds that it's highly unusual to see this type of an event conducted in this way. So what you have, judges, you have circumstantial evidence. And by the way, we're always going to decide these cases on circumstantial evidence. What applicant is going to get up there and admit under oath that, yes, I used specialized knowledge? They're never going to do that. So what the court has to look at is what was the evidence of the facts of the underlying crimes? And then look at his testimony where he admitted that he saw these things and learned these things while he was on the job. And then he used them when he committed the fires. So circumstantial evidence, as this court knows, again, in Romano II, the court went through the analysis that, yes, circumstantial evidence can be sufficient to meet the standard of proof. Yes, Your Honor. In your brief, you outlined the various tests that the courts, various courts have used to establish the analysis. Right. One is the, in some way, connected test, which is used in Goff. One is the but-for test, which Devoney, I believe, uses, and the substantial factor test, which is used in Bloom and Bauer, I believe. Yes. In the ruling by the Fire Board here, did they employ any of that language in their conclusions relative to any one of those tests? Actually, we did, Your Honor. And you'll see it's in our written findings in the record. They did two things. They referred to a substantial factor, that his training and experience was a substantial factor in the method in which he committed the arsons. And then we also relied on there being sufficient evidence to meet the nexus test. Now, we didn't specify but-for or the other in some way connected, but I'm glad you brought that up, Your Honor, because the very fact that these courts have engaged in multiple attempts to define what the nexus test requires, but-for, in some way connected to effect, that should tell us that this statute was drafted broadly, the language in it, and the court opinions say that, in order to capture the myriad of different ways of misconduct that can be committed. And so our legislature, who drafted it and put the very same language in each and every pension forfeiture statute in the court, it's the same. It's word-for-word. That tells us their intent was to broadly construe it. And now we've had a multitude of decisions, and as you well know, some of them are here, some are there, and that legislature has never changed that language. So they want it broad. They want it interpreted in whatever way is consistent with the public policy behind that statute. Let me ask you this. Devoney is a Supreme Court case, correct? Yes, Your Honor. Did we give that any more weight than we would Gough or Bloom or the other ones that have different standards, or were they decided after or before? Yeah. Devoney was decided in 2002. It was actually the appellate court went the other way, the Supreme Court reversed. But that was because, interestingly enough, the underlying police board decision went off on saying, if a policeman commits a crime, he's on duty all the time, therefore that's a violation of the trust and you can't do that. The Supreme Court said, no, no, no, no. That's not the test. You can't say that about a policeman because, obviously, it eviscerates the language of the statute, which had contemplated that they could commit a crime that wouldn't cause forfeiture of their statute. So Devoney is important in that regard, but what I would like the court to focus on, to be honest with you, is the Siwak case. Siwak is critical because I think it's closest in fact pattern, and these cases are very fact specific. It's closest in fact pattern to what happened here. Because in Siwak, the appellate court said, logic compels us to find that he used his specialized knowledge that he gained through all his years as a narcotics police officer, dealing with drugs and all of that, and he used that when he committed this crime. And I say to you that in this case as well, logic compels from the evidence in this record that Mr. Boyle committed these crimes based on his knowledge. Your opponent basically argues that you are essentially trying to punish the plaintiff twice, Mr. Boyle twice, that it's reprehensible that a fireman would be an arsonist and everybody feels that this is a horrible thing. So as a result of that, you're essentially trying to punish him for the crime of arson, which he's already been punished for. I mean, that's their argument. You've read it as well as we have, that the arguments that you're trying to fit into the confines of the substantial factor or sufficient evidence really just doesn't fit because of anybody would start a fire using the same method. So how do you respond to that? Because that's the crux of their argument, and they basically say that Syworth and Collins supports them, not you. Right. I respond by saying, Judge, that's a very, in my opinion, simplistic approach to the issue here because you could say that about any convicted public employee. Any convicted employee who's done time in prison would say, I've been punished. I think that a fireman starting fires, though, has a particular resonance that most people can say, oh, that's kind of creepy. You know, a fireman actually being an arsonist has a more specific kind of creepy resonance than a public official just misbehaving and not doing what they were elected to do. Well, I agree with you, Judge. That is a visceral reaction to it. But let's deal with the law in it. And here we're not punishing him twice. The statute says what it says, and he can take a refund and take his money and go somewhere else. So it's not like we're taking away everything he's contributed to him. He's not being punished more so than he should be. And that's a little bit, I'm sorry. No, you go on. Let me ask you about Syworth. Yes. Your opponent distinguishes it on page 13 of his brief, saying that the record in that case contained the transcript of Syworth's criminal trial, which included extensive evidence about the officer's experience in a narcotic investigation. Do you think that distinguishes Syworth? No, I think that actually corroborates our case. Because Syworth, I mean, I haven't read the transcript of what was put in the evidence, and the appellate court decision really goes into no detail, if you will. I've read it so many times, to say what are the facts in Syworth of the specialized knowledge. It really doesn't say that. It concludes that. Okay? But it doesn't say that. So the principle that a public employee could gain specialized knowledge from, in this case, 25 years of experience, he's a fire lieutenant at the time he leaves the force, that they could use that, gain that experience and then use it, I think, is consistent with Syworth. And the last thing I would like to remark on. Before you get there, I'd like to ask you about the word related. Yes, sir. As it's stated in the statute. Can it be said that his prior experience and training within the department, for I believe it was 18 years before his first convicted arson. Yes, sir. He was in there for 18 years. Can it be said that this training and experience that he had over 18 years before, he said his first convicted fire, related to the arson, related to his service as a firefighter? That there might be some relationship between a defendant's felonious arsons and his experience and training as a firefighter? I think it can be, Your Honor. Because the statute says if it's related, then it will be denied. Yes. And that word related, as you know, is a broadly, you know, subject to broad interpretation. And I think the evidence was in the record, he admitted that during his training experience, which started when he came on the force, he learned these things. And then through his activities, he saw these methods of arson being used. Clearly, at some point during his 18 years, I'm sure he did that. But I'd like to focus on that use of the word related, because let's not forget the nature of the crime here. And I understand the visceral reaction to a fireman committing fire, but it's arson, okay? The fact he committed an arson is a fact in this record. And you could find that the fact it was the crime of arson in and of itself is the type of crime that could comfortably fit within this framework, because it's not like the police case where then every crime committed by a fireman, you're negating the language of the statute. We're not doing that. Let me ask you this. He used cigarette lighter, matches, ordinary tools to start these fires. If he had been a teacher or a judge committing, starting these fires, would then, under these same circumstances, would it make any difference? The fact that he's a fireman and an arsonist, is that sufficient? I mean, it sounds like that's your argument. The fact that he is a fireman and he is an arsonist is sufficient to make it related. I'm saying two things, Judge. One, yes, I do say that, that because he's a fireman, he committed arson, that the nature of that crime in and of itself is enough. But I'm also saying alternatively, there's evidence in this record that he used his experience as a firefighter. He certainly, your opponent disputes that because, you know, the methods that he used to start the fire is cigarette lighter, matches. No, but, I'm sorry. And I think if you look at the methods that were used to start the fire, I mean, I think an arson fire is started in similar ways depending on, no matter who starts it. I mean, that's his argument. So I think my question to you is, is it always going to be enough that the person is a fireman? If a fireman commits arson per se, it's related. Is that your argument? Well, that's, yes, we take that position. But that's not the sole basis of our decision. So what we're saying is alternatively, there's also evidence in this record that he used specialized knowledge, which doesn't have to be a fireman to do that, a policeman or anyone else. If you use specialized knowledge gained from your employment, you could still be liable. But on this issue of the- You wouldn't agree per se if he had been a fireman for one week, would you? Well, I want to say, Your Honor, that if- If you were dealing with a man who was on the force for 18 years prior to the conviction, that's where it starts. Right. I think that's a significant difference. It is, Your Honor. And I don't mean to belittle the point that anybody can commit a fire with starting a match or using a lighter. That's not what- Okay, he used it as a source, but it's what else he did. He lit dumpsters and pushed them up against grease traps. He did things that normal people, you and I or anyone else, probably wouldn't be thinking of doing or know how to do. So it's- Again, in my view, it's a myopic viewpoint to say, Oh, well, he simply lit a match and threw it in a garbage can. And so anybody could do that. But that's not the evidence in this record. The evidence is, indeed, eight different times he used these methods. Not just the ignition source, but how he lit these buildings on fire, schools and other buildings. He used specific methods. So in my personal view, should a fireman who's on the job one week who commits an arson forfeit whatever money he's put in? Yes. That's my personal view. But I think the evidence in this record is that the fact he committed arsons, the way he committed them, okay, and the public policy concerns of not awarding pensions to public employees who are going to be funded by the very people whose trusts were violated dictate that the board's decision be upheld. And I ask you to do that. Thank you. Thank you. May it please this Honorable Court, Mr. Pennelly. Good morning. I want to disagree right off the bat with What's your name? I'm sorry. My name is Tom Needham, as I said earlier, N-E-E-D-H-A-M. I represent the appellee Jeffrey Boyle in this case. First of all, Justice Harris, at the risk of talking against my client's case, he was actually on the fire department for 25 years. So that's a factor that's important to you. That's what the record shows. He started in 1980, and he was arrested and prosecuted in His first fire that he was convicted for was 1998. He started in 1980. Okay, fair enough. So that side would be 18 years. Okay. All right. Then that's correct. He was arrested in 2005. He was prosecuted and convicted in 2006. I disagree about the standard of review. The Illinois Supreme Court has addressed this issue at least twice or maybe three times. Most recently in the case involving Governor Ryan in 2010, the court stated that this exact statutory language involved a question of law. And they stated that although the interpretation of a statute by an agency charged with this administration is generally given deference, the interpretation of this statute remains a question of law that we review de novo. And they cited to the Tadeo case from back in 2005 where the exact same language involving a different statute, the court said that we review the board's interpretation of this capacity and then used them to buy drugs and sell them for a personal reason. So there was a clear nexus there. What do we have here in this case? We have, instead of a plea agreement like you typically have in federal court, you have the proceedings before Judge Porter. When Jeffrey Boyle pled guilty, he was admonished of all his rights as the Supreme Court rules require. Judge Porter asked the prosecutor in that case for a factual basis, which is typical. He provided that factual basis. There was no statement from the prosecutor whatsoever about the fact that Boyle happened to be a Chicago firefighter. It didn't appear to be of any interest. It wasn't an element of the offense. It didn't appear to be something. Was it contained on the police reports, though? Pardon me? There's some information on those police reports that named him as a firefighter. It is. That's true. So it's part of the record. It is definitely part of the record. But when this court decided the Romano case and when the court decided the Bauer case and a lot of these decisions, it seems like when they're looking for where the facts are, they're looking to the trial court proceedings, the criminal court proceedings. That's not determinative, though. No. No, but if you do that in this case, you'll see a complete absence of any reference to Boyle's status as a firefighter. Is this a distinction without significance? I mean, we have an individual. You say the facts are all given. We know what the facts are. Right. You have a man here that he confessed to over 20, 20 arsons. Right. He only pled to eight. He had some sort of deal on this. Well, he was charged with eight. So we know the facts. He confessed to 20. And what's your take on these 20 events? He called out his colleagues. Other firefighters had to respond. Right. They were placed at risk because of his action. Right. It's a legitimate source of complete outrage.  I think that was clear out there, Judge. So what's your take on whether or not his activities relate to his training and experience? Well, I submit, Judge, that based on the record that this Court has to decide, there is no evidence that what he was doing when he started these fires were related in any way to his job as a firefighter. In the argument right before us, Justice Cunningham, you used a hypothetical example to one of the attorneys and asked about what if he had been a UPS truck driver. No, I think a schoolteacher or a judge were the examples. That was for Mr. Pennelly. But I'm saying, is there something about this case, about the manner in which Boyle started these fires, that would make it unique or some reason why a UPS driver or a schoolteacher or a judge could? I have a question to you. Mr. Pennelly, I think, outlined very clearly or carefully for this Court those items that he felt satisfied the nexus, that nexus question between his position as a firefighter and his activities as an arsonist. And he outlined those. What's your response to that? If you look at the record here, and again, there's nothing in the trial court proceedings in the criminal court. In the proceedings before the Board, the transcript of proceedings, there was only one witness that testified, and that's my client, Jeffrey Boyle. His testimony lasted about 20 or 24 pages. Yeah, but he did admit that he had, you know, as part of his training as a firefighter, he learned how fire, you know, something like that. I mean, he did give testimony as to those matters that he learned in terms of how fires are ignited and how they spread and communicate. And Mr. Pennelly tied that testimony to some of his activities as an arsonist. And what I'm asking you specifically is how do you respond to the specific tie-ins that your opponent made, which is, for example, the breeze trap? How do you, you know, how do you respond to that? Mr. Pennelly highlighted that as probably the main example of the use of his knowledge as a firefighter in that he pushed the, I think it was a dumpster in that case, right up next to an open breeze trap, rather. Right. I mean, there was, I don't recall, I might be wrong, but I don't think there was any, that he was questioned about that exact factual point from that case involving the fire. But if you look at the fairly- No, but the police report addressed that issue. Right. And that's part of the record. I understand. The police report said that the ignited dumpster was immediately adjacent to this restaurant breeze trap. Right. That coupled with his testimony about how fires communicate, I think that was Mr. Pennelly's point. Right. That's what I'm asking you to respond to. Okay. And I'll do that. I appreciate that, Justice. If you look at the testimony of Boyle at the hearing where he's being questioned by Mr. Pennelly about the use of his knowledge, it lasts approximately six and a half pages. And I think a fair reading of that completely refutes the idea that he was using anything he learned in the fire academy when he was going around in the middle of the night, drunk, throwing cigarette lighters or starting dumpsters on fire. He was asked to- Let's look at the logic of that. You mean to say that a man who took a test to become a Chicago firefighter, spent 25 years as a firefighter, took a test to become a lieutenant, received probably, I don't know how the fire department works, but probably notices or information from the commissioner or whatever that may have addressed arson. Twenty-five years of that, he didn't glean anything from that relative to arson? Well, of course, the record here doesn't have anything about the- But that's the perspective of the logic of those firefighters sitting there in review of him. Right. Do you think that applies at all? Well, I mean, the test here, the Supreme Court has said in Devoney and other cases that there's a but-for test. So can it be said that but-for, that training or that experience that we're going to refer that he had, that he would not have started the fires? But that's one test, the but-for. Aren't there other tests besides the but-for? Well, the courts use different language. The Illinois Supreme Court in Devoney uses this but-for test. Again, and other public courts have used other tests besides the but-for. Right. And so- Under any of those tests, I see this- What about the Gloth case, GOFF, the teacher who sexually abused a child? Right. He had access to children because of his position. And he was in a position where children, of course, would trust him because he's in a position of authority and he's someone that they see regularly. Well, the language they used was in some way connected. That was the standard in GOFF. Right. So you can't say that this was in some way connected to something he learned as a firefighter? Not based on the record that we have here. And I would note, by the way, that the board has the ability, if they wanted to, to call someone from the Fire Department Training Academy, someone who supervised Boyle, to call him or worked on a fire with him or went to one of these trainings or was responsible for his promotion, and it wasn't done. Instead, we have this 22-page transcript of which six of the pages involve counsel cross-examining Mr. Boyle and trying to get him to admit that something he learned back on the Fire Department. And he's struggling. You can see, read the transcript. He's saying, I don't remember. When fires are started, then they get hotter. I mean, it is, quite frankly, I submit, a very scant basis to find the nexus, whether it be a substantial factor or some related reason or the but-for test that the Supreme Court has used. And when Mr. Boyle pled guilty and the prosecutor gave the basis for his guilty plea, did they mention anything about his activities as a firefighter? No, he did. The only time at the trial court proceedings that the issue of the Chicago Fire Department came up was when Jeffrey Boyle apologized to his family and to his colleagues at the Fire Department and talked about the disgrace that he had brought on the Fire Department. That's the only time. So is it your position, Mr. Needham, that these arsons could have been committed by anybody else that just happened to have been Mr. Boyle who happened to have been a firefighter? Exactly. And it's a bizarre fact pattern that hopefully or thankfully we'll never see again. It's along the category of the cliché of it's not a dog biting a man, it's a man biting a dog. So it's not a firefighter putting out a fire, it's he starting a fire. And I think you sense that. I think in the record it's apparent. And from your appropriate and pertinent questions that there's a source of outrage that should be directed towards him. But that doesn't help us answer the question here of whether or not this test is meant. How do you respond to Mr. Pennelly's contention that per se, just by being a firefighter, if you're an arsonist and a firefighter, you are using some of your specialized knowledge? You know, there's a case, Cullen, the case was decided by this court in 1995 where that same type of logic or argument was made. And if you wanted a case that carries that kind of visceral or sickening reaction that people normally have, then you would find it more so, I submit, in Cullen where he caught a police officer, shot an unarmed teenager between the eyes, watched him go to the ground, drove away to safety, later returned to the scene where the murder victim was laying and while the police were investigating, didn't say anything to the investigating authorities and then went about his business until someone told on him years later. In that case, the argument was made that, well, he's a police officer. He's not supposed to be shooting unarmed people. There's something inherent about peacekeeping that should cause him to forfeit his pension. And this court, in the conclusion of the case, asked the rhetorical question where it basically said, if the General Assembly wanted to deny benefits in that case, why not simply write one paragraph denying all benefits for felony convictions? And so that's what I submit. That's the logic or the approach that Mr. Pennelly is tiptoeing up to in this case. Counsel, may I ask you, relative to the conclusion that the Board comes to in their findings when they made their ruling relative to the issue of the pension, in paragraph three of their conclusion, it's cited on page stamp 12, the evidence in the records, what the Board says, establishes that a substantial factor in the applicant's ability to commit arson was the training and experiences he received as a firefighter with the CFD. Now, when they use the word substantial factor, that's similar to the language that's used in the Bloom case relative to, after we reach, find out what the nexus is, we can use that substantial factor as the appropriate legal text. Isn't that true? Yes. Yeah. And then they go into paragraph eight to say, therefore, the evidence in the record, therefore, establishes that a nexus exists between the felonious acts of arson and the performance of his official duties with the Chicago Fire Department, and that his training as a firefighter was, again, a substantial factor. Right. So, but they do have that in their ruling. They do. And that's, I mean, I understand. That seemed to be the theme of the attempt to cross-examine Mr. Boyle about the training and so forth. It is in there. But if you look at the, that language is from the Bloom case. You have a record there that, again, the court looked to the proceedings in the federal district court, the plea agreement that was entered, and there was a wealth of facts where the court in Bloom. Well, it was an IRS case, wasn't it, the Bloom case? Yeah, right. It was a tax case. And he was basically using his position as an alderman to be compensated. And so there was something far more closely connected than we have here. If I could just conclude. I understand the difficulty of this decision and the manner in which non-lawyers or non-judges would want to respond to Jeffrey Boyle. He knows that, too, by the way, and said so at the hearing and in the circuit court of Cook County. Judge Martin in the circuit court struggled with this also. And his written order stated that he found the result of this case unsettling and unfair. But he also concluded correctly that he's duty-bound to apply the law in this case. And I submit that if you do that in this case, there's no way that Judge Martin can be overturned and the board's order reinstated without somehow stepping back from the logic and approach that was used in Romano in June of 2010. You know, vehemence or emotion doesn't replace logic and legal reasoning. And Jeffrey Boyle's not asking to be applauded or to be welcomed back into the community of firefighters whose respect he forfeited, rightfully so. But he is entitled to be treated the same as any other applicant, the same as Cullen, the same as Romano, and the same as these other people that come here. And just to have the case decided based on the legal precedence and the statutory language, we don't ask for anything more. I appreciate the court's time and the struggle that we have with this unusual, bizarre case. There's no doubt about it. All right? Thank you. We'll take a motion. Mr. Pinelli? Thank you, Your Honors. I just would like to briefly respond to a couple of points. One, on the standard of review. And unfortunately, I think that's where Judge Martin went wrong and why he decided the case improperly, because he used the wrong standard of review. He used de novo. The Supreme Court cases that counsel cites to can be distinguished. Ryan and Taddeo both had to do with interpretive reasoning. It was undisputed that their crimes related to their jobs. Ryan was trying to save his General Assembly pension. But the court said when you look at none of the benefits and member of the fund and interpret those together, he forfeited them all. So that really was why they used a de novo standard. Taddeo had been a township supervisor and then was the convicted mayor of Melrose Park, and he wanted to save part of his pension from when he was a township supervisor. So the court had to interpret the word employee in the context of multiple pensions. So those cases really don't tell you that you have to apply de novo. I believe, again, that Romano and this court's decision on Romano hits the nail on the head. It's manifest right because it's a fact question. And at worst, if you use clear and convincing, you still give deference to the board's decision. And clear and convincing was used in Devaney at the appellate court level. When it was reversed by the Supreme Court, the decision, they did not say because you used the wrong standard of review. They didn't even talk about the standard of review. So you can infer from that that clear and convincing was an appropriate standard. As to whether or not you need evidence in the police reports that he was a firefighter or in his plea agreement, you don't. Bauer and Katalinik say that. They were both long gone from their public jobs, and their plea agreements don't mention them. You don't have to be charged with official misconduct or any reference to your job in order to forfeit the pension. Lastly, placed at risk, the word relate to does have an impact when you are talking about causing the fire department to use resources and manpower that could be used somewhere else to help someone else by causing 20 arsons. There's a direct correlation. And that's why I say it's the crime, the nature of this crime that causes that. So that goes back to your argument that whenever a fireman is charged with your argument because just per se being a fireman, it's related. Yes, because he caused the fire department. It's related to his job because he caused the response and the use of resources, which, by the way, Mr. Boyle admitted at the hearing that he did cause that by his starting of these fires. So he put other firemen at jeopardy. He put other citizens at risk. I think my question is more narrow than the questions. We're basically arguing about whether or not it's per se a denial of his pension because he's a fireman and he started arson. I mean, that's what the argument or the issue has become according to your argument. Well, Judge, respectfully, I don't mean to suggest that you can only decide in favor of the board if you find that. That's just a position we have. You can also disregard that and say, no, we're not going to go that far and say every fireman that commits a fire is going to forfeit. However, the facts of this case are such that it's clear that he used his experience. And so that evidence independently supports a finding that he forfeited under 6221. I don't want the court to think that that's the linchpin or the only basis of our argument. It is not. My last point is on Goff, I think, is right on the money because Goff used his opportunity as a Boy Scout master to actually entice the children that he assaulted. He didn't use his position as a principal and he didn't do it on school grounds. And he didn't use any school equipment. So he was totally unrelated to his position as principal when he committed those acts and violated the trust of those children that had been placed in him. So I think the Goff test applies, which is in some way connected. Clearly there's a connection here, no doubt about it. And for all those reasons, we'd ask you to reverse the circuit court and affirm the board's decision. Thank you for your time. Thank you very much. Thank you, counsel, for a very spirited argument. This matter will be taken under advisement.